RICHARD GIBSON, JR.

*v.*

STATE OF TENNESSEE.

362 S.W.2d 470.

(*Knoxville,* September Term, 1962.)

Opinion filed November 9, 1962.

HAL H. CLEMENTS, JR., Knoxville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, Nashville, for defendant in error.

MR. CHIEF JUSTICE PREWITT, delivered the opinion of the Court.

The defendant below, Richard Gibson, Jr., was convicted of the crime of rape and sentenced to serve ten years in the State Prison.

This case arises out of the criminal assault upon the person of Peggy Linkous, the prosecutrix in this case.

The facts are that on the evening of the alleged rape the prosecutrix had a date with one Grover Stanifer, and this was on her birthday and that she and Stanifer had planned to celebrate.

Stanifer picked up the prosecutrix after she got off from work and drove to Trader Bills on the Clinton Highway. They then drove to the home of Louise O'Neil's mother and Louise joined the prosecutrix and Stanifer and they drove over to Louise's house and picked up her husband, Gaye.

The two couples proceeded then to Archie's Drive-Inn and from there to the Polka Dot Tavern in Fountain City. The group took a booth in the tavern and began to drink some beer. The record indicates that they had been there from thirty to forty-five minutes when the defendant came in and went to the bar. A few minues later the defendant's wife came in. (The defendant's wife and the prosecutrix are cousins.) When the prosecutrix saw the defendant's wife she called her over to the table and later the defendant joined them.

The three couples sat there talking and drinking beer until around 12:30 o'clock a. m., when the tavern closed. Then the defendant suggested that they move the party over to his house. He then bought a package of beer and

the prosecutrix, Stanifer, and the O'Neils got in their car and followed the defendant over to his house.

Later the defendant and his wife left and drove up to his mother's house which is a short distance away. Within about ten minutes the defendant returned without his wife but stated that he was going to return to his mother's house for some records and asked the prosecutrix if she would accompany him on this trip. Prosecutrix agreed to go and she and the defendant left the house heading for the defendant's mother's home. Instead of stopping at his mother's house the defendant proceeded on beyond some distance and turned off on a little side road and parked his car.

The prosecutrix then demanded that she be taken home immediately. To this defendant replied that he was ''going to get it one way or another'', then grabbed her and threw her down on the seat of the car, a fight ensued and defendant produced a knife and threatened to kill the prosecutrix if she did not submit to his desires. She says that she became afraid and submitted to his demands.

After having thus assaulted the prosecutrix the defendant drove back towards his mother's house. When they were approaching his mother's house Stanifer and the O'Neils were driving up the road in search of the prosecutrix and the defendant. Defendant stopped the car in front of his mother's house at which time the prosecutrix jumped out of the car and ran over to the car occupied by Stanifer and the O'Neils. The prosecutrix then informed them that she had been raped by the defendant.

Upon hearing this the men jumped out of the car and started for the defendant, at which time he pulled out his knife. It appears from the record that one of the boys then got a pop bottle out of his car, but before anything could occur the occupants of the defendant's mother's house came out in the yard and a general disturbance occurred. The defendant's mother informed the prosecutrix's party that her husband had a shotgun and was not beyond shooting them, and warned them against any future trouble.

The prosecutrix, Stanifer and the O'Neils then proceeded to go to the County Jail to obtain a warrant for the defendant.

The prosecutrix was then taken to the hospital where she was examined by a physician. The physician stated upon the trial that there was no evidence of trauma and that there was no male spermatozoa in the vaginal vault.

The defendant alleges that the evidence preponderates against the verdict and in favor of his innocence.

As is the usual situation in these type of cases the State insists there are only two witnesses to the alleged crime and their testimony boils down to which statements the jury will believe.

The prosecutrix testified that the defendant carried her out to a lonely road and there forcibly and against her will had sexual intercourse with her.

The defendant denied that he ever had sexual intercourse with this woman or that he ever took her to the place where the alleged rape occurred. The jury was presented with the question of whether or not the prosecutrix's version was correct or that of the defendant.

The testimony of the prosecutrix is corroborated by the testimony of Louise and Gaye O'Neil, who saw the prosecutrix within minutes after the alleged act occurred. They stated that she was hysterical and related to them that the defendant had raped her. These statements by the prosecutrix were made in such close proximity to the occurrence that it is reasonable to rule out all possibilities of fabrication upon their part. *Curtis v. State,* 167 Tenn. 430, 70 S.W.2d 364.

The prosecutrix claimed that the defendant threatened her with a knife when she refused his advances. The record clearly shows that within a few minutes after the alleged act the defendant was seen waving a knife around.

The defendant then insists that the medical testimony does not show that she had sexual intercourse. It is true that in a lot of rape cases the medical proof shows that there is some bleeding in and around the vagina, but this is usually due to the fact that the prosecutrix has never engaged in sexual intercourse and there has been a rupture of the hymen. However, in the present case it was shown that the prosecutrix had been married several times and had given birth to a child. In the light of these facts it is more probable that the prosecutrix' genital tract was in such a condition that penetration could have been accomplished without any appreciable trauma.

The above were all jury questions and the jury saw fit to believe the theory of the State and upon this proposition we do not feel that we should disturb the verdict of the jury.

It results that all assignments of error must be overruled and the judgment of the lower court affirmed.

BURNETT, FELTS, WHITE and DYER, JUSTICES, concurring.